### In re MILLER.

#### (District Court, E. D. Virginia. February 23, 1905.)

**1. BANKRUPTCY—DISCHARGE—FRAUD.**

Where it was finally determined in a bankruptcy proceeding that a certain transfer of a portion of the bankrupt's property was fraudulent, and that such transfer occurred within four months prior to the filing of the petition, he was precluded from obtaining a discharge under the express provisions of Bankr. Act July 1, 1898, c. 541, § 14, subd. "b," 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 411].

**2. SAME.**

Where a bankrupt's transactions showed that his financial difficulties were the result of suspicious and fraudulent dealings, and he had been guilty of gross misrepresentations as to his solvency, and his assets in bankruptcy were purchased by a pawnbroker, who immediately installed the bankrupt as manager of the business, with the same apparent control thereof as before, the bankrupt was not entitled to a discharge.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, §§ 732–736.]

In Bankruptcy. On application for discharge.

Under the standing rules of this court the referees in bankruptcy are required to report upon applications for discharge, and in this case the referee's recommendation is adverse to the granting of the same, and from which report the following appears: First. That the schedules filed in the bankruptcy petition show the amount of debts to be in excess of $70,000, the amount of assets $16,000, from which was realized only the sum of $7,525. Second. That the bankrupt was in the retail clothing business, but more actively engaged in a continuous system of check and note "kiting," by which, with the assistance of his nephew, Adolph Mickaelson, also a bankrupt, and through the credulity, on the one hand, and the avaricious desire to gain usurious interest, on the other, of a series of victims, he was enabled within a period of 12 months, through his own efforts and the instrumentality of his nephew, to raise and dispose of the large sum of $100,000, with nothing in sight from that source, practically, when the crash came. Third. That a few weeks prior to the filing of his petition he informed one of his creditors verbally that he was not only solvent, but did not owe a dollar, although at the time he must have known that he was either the maker or indorser of outstanding obligations of from $75,000 to $100,000. Fourth. That the conduct of the said bankrupt in the matter of an alleged sale to one M. Isentot, whereby he sought to transfer about $500 of his property to said Isentot, was charged to be, and had been ascertained by the referee and court to be, a fraud on the rights of his creditors, and the property recovered. Fifth. At the sale by the receiver of the stock of the bankrupt, consisting of the stock of a wholesale and retail gentlemen's furnishing business, it was purchased by one Frank Jacobs, a pawnbroker of this city, and the bankrupt was immediately installed as manager of the business, apparently having the same in control as prior to his failure, and in this position has continued ever since.

E. R. Baird, Jr., and Thomas H. Willcox, for bankrupt.

WADDILL, District Judge (after stating the facts). The bankrupt is not entitled to his discharge. Section 14, subd. "b," Bankr. Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], as amended by the Act of 5th February, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 411], provides that if any person, having been a bankrupt, "shall have at any time subsequent to the first day of the four months immediately preceding the filing of the petition, trans-

ferred, removed, destroyed, concealed, or permitted to be removed, destroyed, or concealed, any of his property, with intent to hinder, delay or defraud any of his creditors," he shall be denied a discharge. Under this provision, it having been finally determined in this proceeding, to which the bankrupt was a party, that the Isentot transaction referred to by the referee was fraudulent, this alone should suffice to require a denial of his application.

The same should be refused for another reason. Viewing the case in the light of all the facts and circumstances surrounding it, it is apparent that the bankrupt does not belong to that class of honest, unfortunate debtors for whose benefit the bankruptcy act was intended, and designed to furnish relief. In the light of the facts of this case, with its many suspicious and unsavory environments, the bankrupt has no right to expect a court of justice to aid him in his effort to relieve himself from the payment of his debts, or disentangle him from the financial meshes in which he apparently involved himself. His creditors have the right to release him from his obligations, and put him on his feet financially again, if they so desire; but there is not a redeeming feature that suggests itself as a reason why this should be done, or that this court should become a party thereto.

A discharge will be refused.